E-FILING

ADR

FILED

NOV 01 2010

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   ROBBINS UMEDA LLP
    MARC M. UMEDA (197847)
2   mumeda@robbinsumeda.com
    STEPHEN J. ODDO (174828)
3   soddo@robbinsumeda.com
    REBECCA A. PETERSON (241858)
4   rpeterson@robbinsumeda.com
    GINA STASSI (261263)
5   gstassi@robbinsumeda.com
    600 B Street, Suite 1900
6   San Diego, CA 92101
    Telephone: (619) 525-3990
7   Facsimile: (619) 525-3991

8   Attorneys for Plaintiff

9   [Additional counsel on signature page]

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12   GAYLORD LAPLANTE, on Behalf of      )   Case No. CV 10-    4944
     Himself and All Others Similarly Situated,  )   CLASS ACTION
13                                         )
                    Plaintiff,            )   COMPLAINT BASED UPON SELF-
14           vs.                          )   DEALING AND BREACH OF FIDUCIARY
                                          )   DUTY
15   RAE SYSTEMS INC., ROBERT I. CHEN,    )
     PETER C. HSI, RANDALL GAUSMAN,       )
16   LYLE D. FEISEL, SIGRUN HJELMQVIST,   )
     JAMES W. POWER, KEH-SHEW LU,         )
17   SUSAN WANG, BATTERY VENTURES,        )
                                          )
18                  Defendants.           )

19

20

21

22

23

24

25

26

27

28

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

BY FAX

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by plaintiff on behalf of holders of common stock of RAE Systems Inc. ("RAE" or the "Company") against RAE, Battery Ventures ("Battery Ventures") and certain RAE officers and directors.  This action arises out of defendants' violations of state law and sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder in connection with their attempts to sell RAE via an unfair process to Battery Ventures for $1.60 per share (the "Proposed Acquisition").  This action seeks to enjoin defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company at an unfair price through an unfair and self-serving process to Battery Ventures.

2.      In pursuing the unlawful plan to induce RAE shareholders to approve the Proposed Acquisition via an unfair and uninformed process, each of the defendants violated applicable law by directly breaching or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, candor, diligence, independence, good faith, and fair dealing.  The officers and directors of RAE have decided to pursue their own interests, seeking to cash in on valuable change-in-control agreements or prestigious positions in the post-Proposed Acquisition company at the expense of RAE's public shareholders.

3.      On July 23, 2009, RAE's stock traded as high as $1.90, more than 18% higher than the Proposed Acquisition value.  Now, however, the defendants are attempting to sell the Company for a low ball offer at an inopportune time and before RAE shareholders can take full advantage of the value that the Company has to offer to the shareholders.  Despite recent difficulties caused by the global recession, the long term prospects for RAE's services and finances are favorable.  RAE has stated as much in recent press releases.  For example, on August 4, 2010, defendant Robert I. Chen ("Chen"), chairman, president, and chief executive officer, stated that the Company had "strong first half revenue in the Americas."  In the same press release, the Company also reported $23.3 million in revenues, an increase of 17% over the second quarter of 2009.

4.      The timing of the Proposed Acquisition has been engineered to take advantage of a recent decline in the trading price of RAE's shares caused by the nationwide recession and a Foreign

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1   Corrupt Practices Act ("FCPA") investigation being conducted by the SEC and U.S. Department of

2   Justice ("DOJ").  The Company has set aside millions of dollars for a potential settlement.  The

3   uncertainty related to these investigations and amount of any judgment or settlement has depressed

4   the Company's stock value, making the premium here illusory.

5           5.      As the Company is being sold out from under its shareholders, its two co-founders

6   have worked to secure a more lucrative consideration for themselves. Defendants Chen and Peter C.

7   Hsi ("Hsi") convinced Battery Ventures to provide them with 30% of the outstanding capital stock of

8   the go-forward company in exchange for a combined 13,392,857 shares of RAE common stock.

9   Called the "Rollover Holders," Chen and Hsi have agreed, among other things, to contribute their

10  Rollover Shares to the go-forward company immediately prior to the effective date of the Agreement

11  and Plan of Merger, attached as Exhibit 2.1 to the Company's Form 8-K filed with the SEC on

12  September 20, 2010 ("Merger Agreement"), in exchange for a *materially different consideration*

13  than the rest of the shareholders.  In other words, Chen and Hsi secured their own lucrative

14  alternative personal agreement from Battery Ventures and will profit from the Company's continued

15  success, while the remaining shareholders are left with a meager $1.60 per share. This is a benefit

16  not available to RAE's common shareholders. In pursuit to obtain this benefit, defendants Chen and

17  Hsi entered voting agreements with Battery Ventures under which they have agreed to vote their

18  shares in favor of the adoption of the Merger Agreement.  Moreover, Chen and Hsi will remain on

19  the Board of Directors ("Board") of RAE after the acquisition and will also remain as stockholders in

20  RAE. Due to these inherent conflicts of interest, RAE's Board purportedly formed a "disinterested"

21  Special Committee to approve the transaction and recommend that RAE shareholders approve it.

22  However, the committee merely rubber-stamped the Proposed Acquisition.

23          6.      In exchange for the lucrative benefits being offered to Hsi and Chen, but not the Class

24  (as defined herein), the defendants agreed to an unlevel playing field.  For example, the Company

25  agreed to a termination fee provision whereby RAE must pay $3.39 million (plus expenses) to

26  Battery Ventures in the event of a higher offer.  This amount represents an extraordinarily large

27  4.6% of the total cash consideration being paid to the Company's shareholders who will not be

28  equity participants in the go-forward company.  The termination fee is all the more troublesome

1   given the unfair process that was undertaken.  Moreover, the fact that *the Company has now*
2   *received a higher offer* of $1.80 per share from an undisclosed third party means that the termination
3   fee to be paid to Battery Ventures is depriving the Company's shareholders of consideration for their
4   shares.

5          7.   In furtherance of their attempt to secure shareholder approval for the unfair Proposed
6   Acquisition, on October 21, 2010, the Individual Defendants and RAE issued a materially false and
7   misleading Preliminary Proxy Statement on Form PREM14A (the "Proxy").  The Proxy, which
8   recommends that RAE shareholders vote in favor of the Proposed Acquisition, omits and/or
9   misrepresents material information about the unfair sales process for the Company, the unfair
10   consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company.
11   Among other information, the Proxy omits and/or misrepresents the following material information
12   in contravention of sections 14(a) and 20(a) of the 1934 Act regarding:

13          (a)   key financial information used by the Special Committee and its bankers in
14   order to value the Company and the fairness of the Proposed Acquisition, including the key inputs
15   and data underlying the financial analyses and the full set of financial projections; and

16          (b)   other strategic alternatives considered by the Board and the valuations placed
17   on those other strategic alternatives.

18          8.   As explained herein, the foregoing information is material to the impending decision
19   of RAE's shareholders whether or not to vote in favor of the Proposed Acquisition.  As such,
20   defendants' violations of sections 14(a) and 20(a) of the 1934 Act threaten shareholders with
21   irreparable harm for which money damages are not an adequate alternate remedy.  Thus, plaintiff
22   seeks injunctive relief to ensure that defendants cure their violations of fiduciary duty and sections
23   14(a) and 20(a) before RAE's shareholders are asked to vote on the Proposed Acquisition and that
24   defendants are not permitted to seek shareholder support of the Proposed Acquisition without
25   complying with their duty under the federal securities laws to provide shareholders with all material
26   information about the sales process, the proposed consideration, and the Company's intrinsic value.

27          9.   Because defendants dominate and control the business and corporate affairs of RAE,
28   they have access to nonpublic private corporate information concerning RAE's assets, business, and

- 3 -

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1   future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power

2   between them and the public shareholders of RAE, which makes it inherently unfair for them to

3   execute and pursue any Proposed Acquisition agreement under which they will reap disproportionate

4   benefits to the exclusion of maximizing stockholder value. Nonetheless, instead of attempting to

5   engage in a fair process, untainted by self-dealing, defendants spent a substantial effort tailoring the

6   Proposed Acquisition to meet their specific needs and the needs of Battery Ventures.

7          10.    If consummated, the Proposed Acquisition will result in RAE's shareholders losing

8   the value of their investment in RAE. The proposed consideration reflects an inadequate premium to

9   the trading price of the Company's common stock prior to the announcement of the Proposed

10  Acquisition given that RAE has promising finances and products.

11         11.    In short, the Proposed Acquisition is designed to unlawfully divest RAE's public

12  stockholders of the future growth potential of the Company by engaging in an unfair process riddled

13  with self-dealing.

14                                **JURISDICTION AND VENUE**

15         12.    This Court has jurisdiction over all claims asserted herein pursuant to section 27 of

16  the 1934 Act for violations of sections 14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9

17  promulgated thereunder. This Court has jurisdiction over the subject matter of this action pursuant

18  to 28 U.S.C. section 1331.

19         13.    Venue is proper in this District because RAE has its principle place of business in this

20  District. Plaintiff's claims arose in this District because it is where most of the actionable conduct

21  took place, where most of the documents are electronically stored, where the evidence exists, and

22  where virtually all the witnesses are located and available to testify at the jury trial permitted on

23  these claims in this Court. Moreover, each of the Individual Defendants, as Company officers and/or

24  directors, has extensive contacts with this District.

25                                        **PARTIES**

26         14.    Plaintiff Gaylord LaPlante is a shareholder of RAE.

27         15.    Defendant RAE is a Delaware corporation that develops and manufactures rapidly-

28  deployable, multi-sensor chemical and radiation detection monitors and wireless networks for

1    application in five key markets: oil and gas, hazardous material management, industrial safety, civil

2    defense, and environmental remediation.  RAE's personal, portable, and wireless sensor networks

3    allow customers in more than ninety-five countries to identify safety and security threats in real-

4    time. RAE's principal executive offices are located at 3775 North First Street, San Jose, California.

5          16.    Defendant Chen is RAE's President, Chief Executive Officer, chairman, and a

6    director and has been since co-founding the Company in 1991.

7          17.    Defendant Hsi is RAE's Chief Technology Officer and a director and has been since

8    co-founding the Company in 1991.

9          18.    Defendant Randall Gausman (Gausman") is RAE's Chief Financial Officer and has

10    been since October 2006.

11          19.    Defendant Lyle D. Feisel is a RAE director and has been since March 2001.

12          20.    Defendant Sigrun Hjelmqvist is a RAE director and has been since March 2004.

13          21.    Defendant James W. Power ("Power") is a RAE director and has been since May

14    2006.

15          22.    Defendant Keh-Shew Lu ("Lu") is a RAE director and has been since March 2009.

16          23.    Defendant Susan Wang ("Wang") is a RAE director and has been since March 2009.

17          24.    Defendant Battery Ventures is a Delaware limited partnership focused on investments

18    in technology and related sectors.  Battery Ventures's principal executive offices are located at

19    Reservoir Woods, 930 Winter Street, Suite 2500, Waltham, Massachusetts.

20          25.    The defendants named above in ¶¶16-23 are sometimes collectively referred to herein

21    as the "Individual Defendants."

22                    **INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

23          26.    Under Delaware law, the directors and officers of a publicly traded corporation have

24    fiduciary duties of loyalty, good faith, and care to shareholders.  To diligently comply with these

25    duties, neither the directors nor the officers may take any action that:

26                 (a)    adversely affects the value provided to the corporation's shareholders;

27                 (b)    will discourage, inhibit, or deter alternative offers to purchase control of the

28    corporation or its assets;

                                                    - 5 -

1         (c)     contractually prohibits themselves from complying with their fiduciary duties;

2         (d)     will otherwise adversely affect their duty to secure the best value reasonably

3 available under the circumstances for the corporation's shareholders; and/or

4         (e)     will provide the directors and/or officers with preferential treatment at the

5 expense of, or separate from, the public shareholders.

6      27.     In accordance with their duties of loyalty and good faith, the Individual Defendants,

7 as directors and/or officers of RAE, are obligated under Delaware law to refrain from:

8         (a)     participating in any transaction where the directors' or officers' loyalties are

9 divided;

10         (b)     participating in any transaction where the directors or officers receive, or are

11 entitled to receive, a personal financial benefit not equally shared by the public shareholders of the

12 corporation; and/or

13         (c)     unjustly enriching themselves at the expense or to the detriment of the public

14 shareholders.

15      28.     Defendants, separately and together, in connection with the Proposed Acquisition, are

16 knowingly or recklessly violating their fiduciary duties and/or aiding and abetting such breaches,

17 including the Individual Defendants' duties of loyalty, good faith, and independence owed to

18 plaintiff and other public shareholders of RAE. Certain of the Individual Defendants stand on both

19 sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits,

20 including personal financial benefits not shared equally by plaintiff or the Class. Certain RAE

21 executives are also retaining their prestigious and lucrative positions and compensation at the post-

22 Proposed Acquisition company. These executives have managed to secure for themselves

23 substantial employment at the expense of the shareholders' best interests. Accordingly, the Proposed

24 Acquisition will benefit the Individual Defendants in significant ways not shared with Class

25 members. As a result of the Individual Defendants' self-dealing and divided loyalties, neither

26 plaintiff nor the Class will receive adequate or fair value for their RAE common stock in the

27 Proposed Acquisition.

28

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1       29.    Because the Individual Defendants are knowingly or recklessly breaching their duties

2   of loyalty, good faith, and independence in connection with the Proposed Acquisition, the burden of

3   proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its

4   negotiation, structure, price and terms, is placed upon defendants as a matter of law.

5                          **THE FLAWED SALE PROCESS**

6       30.    In November 2009, unbeknownst to the Board, defendants Chen and Guasman began

7   discussing a potential sale of the Company with Battery Ventures.  Also in November 2009, the

8   Company received inquiries from other private equity firms expressing an interest in a transaction to

9   acquire the Company.  However, before the Board considered the overtures from the private equity

10   firms, on January 27, 2010, Battery Ventures and RAE entered a non-disclosure agreement.  That

11   same day, defendants Chen, Guasman, and Hsi gave a presentation to Battery Ventures about the

12   Company's business and outlook.  From the beginning of their discussions with Battery Ventures,

13   defendants Chen, Gausman, and Hsi favored Battery Ventures over other suitors because of its desire

14   to retain their services and the potential for an equity position in the go-forward company.

15       31.    Thereafter, on February 3, 2010, three months after the Company's officers had their

16   discussions with Battery Ventures, the Board finally convened to discuss Battery Ventures's interest

17   in acquiring the Company and the process that had already taken place.  At the meeting, the Board

18   formed a Strategic Planning Committee, consisting of defendants Power and Wang.  Defendants

19   Chen, Guasman, and Hsi were purportedly told to stop discussions regarding an acquisition by

20   Battery Ventures.  However, the order from the Board to cease discussions had little practical effect

21   as detailed below.

22       32.    In February 2010, the Strategic Planning Committee created a three-year business

23   plan to provide suitors with the Company's business prospects.  The material information in this

24   business plan is not disclosed in the Proxy for the Company's shareholders to review.

25       33.    On March 12, 2010, Battery Ventures made a proposal to acquire the Company at

26   $1.45 per share.  That offer included a provision where defendants Chen and Hsi would exchange a

27   substantial portion of their 30% ownership in the Company for an equity position in the go-forward

28   business.  Following this offer, the Board formed a Special Committee that included defendants Lu

1  and Wang. The Special committee retained UBS Securities LLC ("UBS") as its financial advisor.

2  In addition to Battery Ventures offer, the Company received unsolicited offers from other interested

3  parties in March 2010.

4         34.    On April 2, 2010, despite claiming that the Special Committee was "independent,"

5  defendants Chen and Guasman met with the Special Committee to discuss the Company's options as

6  a publicly-traded and private company. Also on April 2, 2010, the Special Committee and

7  defendants Chen and Guasman were updated on the SEC and DOJ's investigation of the FCPA. The

8  Proxy, however, fails to disclose whether the Special Committee considered whether the resolution

9  of the FCPA issue would provide the Company's shareholders with an opportunity to maximize the

10  Company's value in any acquisition.

11         35.    By April 14, 2010, the Special Committee had decided to provide Battery Ventures

12  with due diligence before any other suitor and before any "market check" had occurred. About a

13  week later, on April 21, 2010, UBS created a list of prospective acquirers for a purported "market

14  check." On April 27, 2010, Battery Ventures was provided a data room to review confidential

15  information that had not been provided to any other suitors, despite the Individual Defendants

16  knowledge that other suitors existed.

17         36.    In May 2010, and while Battery Ventures was already conducting due diligence, the

18  Special Committee began considering other prospective acquirers. Meetings and in-person

19  presentations were conducted with prospective acquirers in May and June 2010. However, these

20  meetings were not conducted by the Special Committee. Defendants Chen, Hsi, and Guasman

21  conducted the presentations and continued to lead discussions with the potential suitors. Moreover,

22  on May 6 and 7, 2010, only defendant Chen and his advisor attended meetings with Battery Ventures

23  at its offices. The meetings concerned RAE and the future prospects of the Company.

24         37.    Despite the fact that there were multiple other suitors interested in the Company, on

25  May 20, 2010, the Special Committee authorized the Company to reimburse expenses incurred by

26  Battery Ventures,

27         38.    On June 2, 2010, UBS provided the potential acquirers with a date of June 15, 2010,

28  to submit an offer to acquire the Company. As such, on June 15, 2010, eleven bidders submitted

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1   offers. Parties identified in the Proxy as Bidders A and B made offers for more consideration than

2   Battery Ventures's offer. Likewise, Bidder C's offer provided a price range of $1.25 to $1.50.

3      39.    To comply with the previous granting to Battery Ventures of a "most favored nation"

4   provision that would allow it to obtain an amended standstill agreement if the Company entered a

5   more beneficial standstill agreement with a different party, on July 29, 2010, Battery Ventures

6   standstill agreement was modified based on the terms negotiated with other bidders.

7      40.    On August 11, 2010, Battery Ventures's counsel provided the Company with a draft

8   merger agreement. The draft merger agreement contained a termination fee of 4.6% and a provision

9   that required the Company to reimburse expenses if the merger agreement was not approved.

10      41.    On August 13, 2010, Bidder A still was interested in acquiring the Company, but

11   asked for certain conditions to be met before any acquisition. Those conditions included settlement

12   of the FCPA matters with the SEC and DOJ, and for certain asset divestures. If the Company met

13   these conditions, Bidder A's offer range would provide shareholders 7%-16% more value than

14   Battery Ventures's offer. Given that defendant Guasman had stated the FCPA matter would come to

15   a "conclusion soon," a short waiting period in order to meet Bidder A's conditions was reasonable in

16   order to maximize shareholder value. However, in response to Bidder A's offer and conditions, the

17   Special Committee told Bidder A that it must revise its conditions or else the Special Committee

18   would not continue negotiations with it.

19      42.    On August 17, 2010, Battery Ventures asked for the Company to allow it to discuss

20   certain matters with Rollover Holders related to terms of their involvement in a newly formed entity

21   if the Proposed Acquisition was consummated. The Company approved the request, and Battery

22   Ventures entered into discussions with defendants Chen and Hsi and raised its offer to $1.60 per

23   share. On August 20, 2010, the Company entered into an exclusivity agreement with Battery

24   Ventures. Then, on August 23, 2010, the Company authorized defendants Chen and Hsi to conduct

25   negotiations with Battery Ventures on terms and conditions for their equity in the go-forward

26   company and employment agreements with defendants Chen (and his wife) and Hsi.

27      43.    The Individual Defendants executed the Merger Agreement on September 19, 2010

28   and announced the Proposed Acquisition before the market opened on September 20, 2010. The

1    next day, the Board received an offer of $1.80 per share from an undisclosed third party.    In

2    response, the Board continued going forward with the Proposed Acquisition, but also decided to

3    enter a confidentiality agreement with the third party.    The undisclosed company began due

4    diligence on October 5, 2010.    Now, if there is a change in recommendation and the undisclosed

5    company acquires RAE it will trigger the termination fee payment, which will waste value that the

6    shareholders should receive in consideration for their valuable shares.

7                               **THE PROPOSED ACQUISITION**

8            44.    On September 20, 2010, RAE issued the following press release announcing that the

9    Individual Defendants had agreed to sell RAE to Battery Ventures.    Battery Ventures will acquire

10    RAE through a cash offer of $1.60 per share for all outstanding shares of RAE.    The press release

11    stated in relevant part:

> **RAE Systems Signs Definitive Agreement to Be Acquired by Battery Ventures for $1.60 per Share**
>
> **RAE Systems to Hold Conference Call Today at 8:00 a.m. Pacific Time**
>
> RAE Systems Inc. (NYSE Amex: RAE), a leader in delivering innovative sensor solutions to serve industrial, energy, environmental, and government safety markets worldwide, signed a definitive agreement to be acquired for $1.60 per share in cash by an affiliate of Battery Ventures, a multi-stage investment firm focused on technology and innovation worldwide. The purchase price represents a premium of approximately 53.8% over RAE Systems' closing share price on September 17, 2010, and a premium of approximately 85.1% over RAE Systems' average closing share price for the 30 trading days ending on September 17, 2010.
>
> This transaction is subject to customary closing conditions, including the approval of RAE Systems' stockholders. There is no financing condition to the transaction.
>
> "Over the years, we have built a strong reputation in the safety industry, a quality, diverse product and technology portfolio, and a dedicated, result-oriented employee base, all of which are contemplated in this transaction," said Robert Chen, RAE Systems president and chief executive officer. "After an extensive review of our strategic alternatives, the special committee of our board of directors has determined that this transaction provides for the best value to our stockholders. RAE Systems has successfully navigated through a great deal of change over the past few years. With this newest evolution, RAE Systems will leverage Battery Ventures' strategy and vision to help increase its industry presence via organic growth and complementary acquisitions. Looking ahead, we will continue to execute on our strategy to be a leading innovator through the advancement of intelligent, connected, wireless gas and radiation detection solutions. Throughout this transaction, RAE Systems management and employees will remain committed to customer service, quality and operating excellence."

1    Jesse Feldman, Battery Ventures Partner, stated, "RAE Systems has significant long-term market growth potential, and we are excited to partner with the company on driving this growth both organically and through strategic acquisitions. Our prior experience and growing interest in industrial technologies makes RAE Systems a natural investment for Battery. We are eager to support the company through its next phase of evolution and look forward to working with RAE's talented employee base, valuable customer and partner ecosystems, and industry leading technology platform to get there."

2

3

4

5    A special committee of the RAE Systems Board of Directors and the disinterested members of the board have unanimously approved the agreement and recommend RAE Systems' stockholders approve the transaction.

6

7    The company will file a proxy statement with the Securities and Exchange Commission, and a shareholder meeting will be held within 60 days following the SEC's review. Management will hold a conference call to discuss this transaction today, September 20, at 8:00 a.m. Pacific Time (11:00 a.m. Eastern Time). Access instructions for the call are included later in this release.

8

9

10    After the completion of this transition, the RAE Systems board of directors will include Mr. Chen and Dr. Peter C. Hsi, co-founders of RAE Systems, who will also remain as stockholders in RAE Systems, as well as Mr. Feldman and Morgan Jones of Battery Ventures.

11

12    UBS Investment Bank is acting as financial advisor to the Special Committee of the Board of RAE Systems, and Fenwick & West LLP, is acting as legal advisor to the Special Committee.

13

14

15    45.    The premium being offered in the Proposed Acquisition drastically undervalues the

16    Company's assets and business prospects. For example, the Individual Defendants agreed to sell the

17    Company before any settlement has been announced with the SEC and Department of Justice related

18    to the FCPA investigation announced in 2008. On November 4, 2009, defendant Gausman said that

19    the FCPA investigation would conclude shortly and stated "I think [we are] in the process of

20    hopefully resolving [the] FCPA investigation…. And as we wrap this thing up, we expect [legal

21    expenses] to trail off even further." In the Company's second quarter conference call for fiscal 2010,

22    defendant Gausman believed the investigation into violations of the FCPA would be completed

23    before the end of 2010.   However, despite the imminence of this settlement, the Individual

24    Defendants are selling now while the stock is still depressed. Indeed, analysts on the September 20,

25    2010, conference call inquired as to the rush to enter into the Proposed Acquisition given the

26    overhang of the FCPA investigation:

27    **Ken Liddy** - *Wells Fargo Securities - Analyst*

28

- 11 -

1   Why did you wait until -- why did you do this before announcing your settlement
    with the government, with the FCPA investigation?

2   **Randy Gausman** - *RAE Systems Inc. - VP, CFO*

3   Well, this process has been underway for quite a period of time. Although, as we
    indicated at the end of our third-quarter conference call, we expect the resolution to
4   the FCPA matter to come to a conclusion soon. This process sort of tracked on a
    parallel path and came to fruition at this time. Again, as I said previously, the Board
5   of Directors unanimously approved this transaction for today's announcement.

6       46.     Despite the ongoing FCPA investigations the Company's prospects have recently

7   improved and the Company's stock value is posed for a surge. For the second straight quarter, the

8   Company reported rising revenues and profitable quarters. For example, on May 5, 2010, the

9   Company reported revenue of $18.8 million, the second highest first quarter revenue in the

10  Company's history. Also on May 5, 2010, defendant Chen stated "*[w]e have positioned RAE*

11  *Systems to be a leading innovator of safety and security products to deliver wireless real-time data*

12  *enabling our customers to make better decisions faster.*" Then on August 4, 2010, the Company

13  reported that its first half revenue exceeded the comparable quarters for 2009 by 8%.

14                          **PRECLUSIVE DEAL PROTECTION DEVICES**

15      47.     In order to meet their fiduciary duties, the Individual Defendants are obligated to

16  explore transactions that will maximize shareholder value, and not structure a preferential deal for

17  themselves. Due to Individual Defendants' eagerness to enter into an acquisition with Battery

18  Ventures, they failed to implement a process to obtain the maximum price for shareholders. As a

19  result of the Individual Defendants' conduct, RAE's public stockholders have been and will continue

20  to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of

21  their Company.

22      48.     The Individual Defendants breached their fiduciary duties by agreeing to a $3.39

23  million termination fee that an acquirer will have to pay Battery Ventures rather than returning that

24  value to the shareholders of RAE. The termination fee is equal to $0.07 per RAE share. A

25  termination fee of that proportion is unjust, prevents the shareholders from receiving the inherent

26  value of their shares, and wastes shareholder value on excessive and preclusive deal protection

27  measures, especially since the Board did not obtain a post-closing go shop period. This is of

28  particular concern now that a superior offer has emerged offering an increase in value of more than

                                        - 12 -

1 | 11% for each share. Instead of attempting to negotiate a transaction reflecting the highest price
2 | reasonably available for the Company's shareholders, the Individual Defendants spent considerable
3 | effort tailoring the Proposed Acquisition to meet the needs of the Rollover Defendants.

4 |      49.    On September 20, 2010, the Company filed a Form 8-K with the SEC, wherein it
5 | disclosed the Merger Agreement. The announcement and filing reveal that the Proposed Acquisition
6 | is the product of a flawed sale process and, unless increased, would be consummated at an unfair
7 | value.

8 |      50.    Under section 4.3 of the Merger Agreement, RAE is subject to a no solicitation clause
9 | that prohibits the Company from seeking a superior offer for its shareholders. Section 4.3 restricts
10 | RAE's ability to:

11 |     (i) solicit, initiate, encourage, induce or facilitate the communication, making,
12 | submission or announcement of any Acquisition Proposal or Acquisition Inquiry; (ii)
    furnish any information regarding any of the Acquired Corporations to any Person in
    connection with or in response to an Acquisition Proposal or Acquisition Inquiry;
13 |     (iii) engage in discussions or negotiations with any Person with respect to any
    Acquisition Proposal or Acquisition Inquiry; (iv) approve, endorse or recommend
14 |     any Acquisition Proposal; or (v) execute or enter into any letter of intent with respect
    to an Acquisition Proposal or any other Acquisition Agreement
15 |

16 |      51.    Though the Merger Agreement ostensibly has a "fiduciary out" provision that allows
17 | the Company to negotiate with other bidders, this provision is actually illusory. In order to negotiate
18 | with any other suitors, the potential acquirer would first have to make an unsolicited offer that RAE
19 | must supply to Battery Ventures so that Battery Ventures has the right to match the superior offer
20 | within two days. Without access to non-public information, which the Company is prevented from
21 | offering under the Merger Agreement, no other bidder will emerge to make such an offer.

22 | **THE MATERIALLY MISLEADING PROXY**

23 |      52.    In order to secure shareholder approval of this unfair deal, defendants filed the
24 | materially misleading Proxy on October 21, 2010. The Proxy, which recommends that RAE's
25 | shareholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material
26 | information about the unfair sale process, the unfair consideration, and the true intrinsic value of the
27 | Company. Specifically the Proxy omits/or misrepresents the material information set forth below in
28 | contravention of sections 14(a) and 20(a) of the 1934 Act.

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1    53.    *The strategic alternatives available to the Company*. Defendants' failure to disclose

2    all material information about the strategic alternatives that purportedly were given consideration by

3    the Board, the Special Committee, and Company management renders, among other sections, the

4    following text of pages 23 of the Proxy materially misleading:

5        In the course of reaching that determination and recommendation, the Special
         Committee and our board of directors considered a number of potentially positive
6        factors in its deliberations, including the following:

7                                                    *    *    *

8        The business market and execution risks associated with remaining independent and
         successfully implementing a stand-alone strategy given the highly competitive nature
9        of our industry, our relatively small size and resources as compared to our
         competitors, and other factors ....
10

11   54.    This statement is materially misleading to shareholders because it does not provide

12   any analysis of how the potential alternative or remaining independent compares financially to the

13   Proposed Acquisition. This information is material because shareholders are entitled to know why

14   the Special Committee preferred and pursued one strategic alternative over others, as well as the

15   nature and financial viability of those other alternatives.

16   55.    *The financial projections relied on by UBS in its Discounted Cash Flow ("DCF")*

17   *Analysis*. Defendants admit that UBS conducted its DCF analysis by "calculate[ing] a range of

18   implied present values (as of September 30, 2010) of the standalone unlevered, after-tax free cash

19   flows that RAE Systems was forecasted to generate from October 1, 2010 until December 31, 2014,"

20   as stated in the Proxy at page 29. The estimated future cash flows of RAE Systems, in turn, are

21   derived from the financial projections that UBS relied on in its analysis. These financial projections

22   are not disclosed in the discussion of the financial projections on page 29 of the Proxy. Without this

23   information, shareholders will be unable to independently assess the factors underlying the analysis

24   and the primary assumptions used by UBS in the analysis.

25   56.    *The inputs and data underlying UBS's DCF Analysis*. In defendants' discussion of

26   UBS's DCF analysis on page 29 of the Proxy, defendants fail to disclose (i) how and why the

27   discount rate range of 20% to 25% was selected; and (ii) how and why the estimated range of

28   EBITDA terminal value multiples of 8.0x to 9.0x were selected. This information is material

- 14 -

1    because the DCF calculates the present value of RAE's future cash flows, and, without the

2    information set forth above, shareholders are unable to independently assess whether UBS' analysis,

3    as set forth in the Proxy, is an adequate measure of the value of these cash flows.

4          57.    *The inputs and data underlying UBS's Selected Public Companies Analysis*. In

5    defendants' discussion of UBS's Selected Public Companies Analysis on page 27-28 of the Proxy,

6    defendants fail to disclose: (i) the criteria for selection of the comparable companies; (ii) how the

7    summary statistics for each company, including the specific equity and enterprise values for each

8    company; and (iii) the implied multiples for each company.  This information is material because the

9    Selected Public Companies Analysis assesses the public market value of the Company as compared

10   to its comparables, and, without the information set forth above, shareholders are unable to

11   independently assess whether UBS's analysis, as set forth in the Proxy, is an adequate measure of

12   this value assessment.

13         58.    *The data and inputs underlying UBS's Selected Transactions Analysis*. In

14   defendants' discussion of UBS's Selected Transactions Analysis at page 28-29 of the Proxy,

15   defendants fail to disclose: (i) the criteria for selection of the transactions used; (ii) the size of each

16   transaction; and (iii) the nature of the consideration for each transaction.  This information is

17   material because the Selected Transactions Analysis assesses the consideration offered in the

18   Proposed Acquisition as compared to comparable transactions, and, without the information set forth

19   above, shareholders are unable to independently assess whether UBS's analysis, as set forth in the

20   Proxy, is an adequate measure of this value assessment.

21         59.    *The Special Committee's Retention of UBS*.  In defendants' discussion of UBS's

22   retention by the Special Committee on page 29 of the Proxy, defendants failed to disclose: (i) the

23   exact amount of the "portion" of UBS's $3.2 million fee that is contingent on consummation of the

24   Proposed Acquisition; and (ii) whether UBS has previously rendered services for RAE and/or

25   Battery Ventures, and the fees paid to UBS for the same.  Without this information, shareholders

26   cannot assess whether UBS was motivated to give a particular fairness opinion for reasons other than

27   the merits of the Proposed Acquisition, and what weight, if any, to place of the fairness opinion in

28   deciding whether to tender their shares.

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1    60.    The Individual Defendants were aware of their duty to disclose the foregoing material

2    information in the Proxy, and acted with at least negligence in failing to ensure that this material

3    information was disclosed in the Proxy.  Absent disclosure of this material information, shareholders

4    are unable to make an informed decision whether to vote in favor of the Proposed Acquisition, and

5    are thus threatened with irreparable harm.

6                                          **SELF-DEALING**

7    61.    By reason of their positions with RAE, the Individual Defendants have access to non-

8    public information concerning the financial condition and prospects of RAE.  Thus, there exists an

9    imbalance and disparity of knowledge and economic power between the Individual Defendants and

10   the public shareholders of RAE.  Therefore, it is inherently unfair for the Individual Defendants to

11   execute and pursue any merger agreement under which they will reap disproportionate benefits to

12   the exclusion of obtaining the best value for shareholders.  Instead, the Individual Defendants

13   disloyally placed their own interests first, and tailored the terms and conditions of the Proposed

14   Acquisition to meet their own personal needs and objectives.  Certain Individual Defendants are also

15   receiving lucrative change-in-control benefits.

16   62.    The Proposed Acquisition is wrongful, unfair, and harmful to RAE's public

17   stockholders, and represents an effort by the Individual Defendants to aggrandize their own financial

18   position and interests at the expense of and to the detriment of Class members (as defined herein).

19   Specifically, defendants are attempting to deny plaintiff and the Class (as defined herein) their

20   shareholder rights through the sale of RAE via an unfair process.  Accordingly, the Proposed

21   Acquisition will benefit the Individual Defendants at the expense of RAE's shareholders.

22   63.    The Individual Defendants have also approved the Proposed Acquisition so that it

23   transfers 100% of RAE's unique assets, revenues, and profits to Battery Ventures, thus all of RAE's

24   operations will now accrue to the benefit of Battery Ventures.

25   64.    Defendants Chen and Hsi have negotiated for themselves a 30% interest in the go-

26   forward Company to the detriment of the Company's shareholders. Defendant Chen even negotiated

27   a position for his wife at the go-forward company.  Defendants Chen and Hsi are attempting to

28   squeeze out the Company's public stockholders in order to obtain a larger equity interest in the go-

1  forward Company so they cap reap the benefits to the exclusion of the Company's public

2  stockholders.

3          65.    In light of the foregoing, the Individual Defendants must, as their fiduciary

4  obligations require:

5          •    withdraw their consent to the sale of RAE and allow the shares to trade
               freely;
6
7          •    act independently so that the interests of RAE's public stockholders will be
               protected;
8
           •    adequately ensure that no conflicts of interest exist between defendants' own
9               interests and their fiduciary obligation to maximize stockholder value or, if
               such conflicts exist, to ensure that all conflicts be resolved in the best
10              interests of RAE's public stockholders; and

11         •    solicit competing bids to Battery Ventures's offer to ensure that the
               Company's shareholders are receiving the maximum value for their shares.

12                          **CLASS ACTION ALLEGATIONS**

13         66.    Plaintiff brings this action for himself and on behalf of all holders of RAE common

14  stock which have been or will be harmed by the conduct described herein (the "Class"). Excluded

15  from the Class are the defendants and any individual or entity affiliated with any defendant.

16         67.    This action is properly maintainable as a class action.

17         68.    The Class is so numerous that joinder of all members is impracticable. According to

18  RAE's SEC filings, there were more than 59.4 million shares of RAE common stock outstanding as

19  of July 31, 2010.

20         69.    There are questions of law and fact which are common to the Class and which

21  predominate over questions affecting any individual Class member. The common questions include,

22  *inter alia*, the following:

23              (a)    whether the Individual Defendants have breached their fiduciary duties of

24  undivided loyalty, independence, or due care with respect to plaintiff and the other members of the

25  Class in connection with the Proposed Acquisition;

26              (b)    whether the Individual Defendants are engaging in self-dealing in connection

27  with the Proposed Acquisition;

28

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1    (c)    whether the Individual Defendants have breached any of their other fiduciary

2    duties owed to plaintiff and the other members of the Class in connection with the Proposed

3    Acquisition, including the duties of good faith, diligence, and fair dealing;

4    (d)    whether RAE aided and abetted the Individual Defendants' breaches of

5    fiduciary duties;

6    (e)    whether Battery Ventures aided and abetted the Individual Defendants'

7    breaches of fiduciary duties; and

8    (f)    whether plaintiff and the other members of the Class would suffer irreparable

9    injury were the transactions complained of herein consummated.

10    70.    Plaintiff's claims are typical of the claims of the other members of the Class and

11    plaintiff does not have any interests adverse to the Class.

12    71.    Plaintiff has retained competent counsel experienced in litigation of this nature and

13    will fairly and adequately represent and protect the interests of the Class.

14    72.    The prosecution of separate actions by individual members of the Class would create

15    a risk of inconsistent or varying adjudications with respect to individual members of the Class which

16    would establish incompatible standards of conduct for the party opposing the Class.

17    73.    Plaintiff anticipates that there will be no difficulty in the management of this

18    litigation. A class action is superior to other available methods for the fair and efficient adjudication

19    of this controversy.

20    74.    Defendants have acted on grounds generally applicable to the Class with respect to

21    the matters complained of herein, thereby making appropriate the relief sought herein with respect to

22    the Class as a whole.

23                                    **COUNT I**

24    **Against the Individual Defendants and RAE for Violations of**
**Section 14(a) of the 1934 Act and SEC Rule 14a 9 Promulgated Thereunder**
25

26    75.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

27    forth herein.

28

- 18 -

1    76.    The Individual Defendants and RAE disseminated the false and misleading Proxy

2  specified above, which failed to disclose material facts necessary in order to make the statements

3  made, in light of the circumstances under which they were made, not misleading.

4    77.    The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants

5  and RAE. It misrepresented and/or omitted material facts, including material information about the

6  unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition,

7  and the actual intrinsic value of the Company's assets.

8    78.    In so doing, the Individual Defendants and RAE made untrue statements of material

9  facts and omitted to state material facts necessary to make the statements that were made not

10  misleading in violation of section 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated

11  thereunder. By virtue of their positions within the Company, the Individual Defendants and RAE

12  were aware of this information and of their duty to disclose this information in the Proxy.

13    79.    The Individual Defendants and RAE were at least negligent in filing the Proxy with

14  these materially false and misleading statements.

15    80.    The omissions and false and misleading statements in the Proxy are material in that a

16  reasonable shareholder would consider them important in deciding how to vote on the Proposed

17  Acquisition. In addition, a reasonable investor would view a full and accurate disclosure as

18  significantly altering the "total mix" of information made available in the Proxy and in other

19  information reasonably available to shareholders.

20    81.    By reason of the foregoing, the Individual Defendants and RAE have violated section

21  14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

22    82.    Because of the false and misleading statements in the Proxy, plaintiff is threatened

23  with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is

24  appropriate to ensure defendants' misconduct is corrected.

25

26

27

28

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

## COUNT II

### Against the Individual Defendants and RAE for
### Violation of Section 20(a) of the 1934 Act

83.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

84.    The Individual Defendants acted as controlling persons of RAE within the meaning of section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of RAE, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends is false and misleading.

85.    Each of the Individual Defendants and RAE was provided with or had unlimited access to copies of the Proxy and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

86.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Acquisition. They were, thus, directly involved in the making of this document.

87.    RAE also had direct supervisory control over composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy. RAE, in fact, disseminated the Proxy and is, thus, directly responsible for materially misleading shareholders because it permitted the materially misleading Proxy to be published to shareholders.

88.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants and RAE were each involved in negotiating, reviewing, and approving the Proposed

- 20 -

1   Acquisition. The Proxy purports to describe the various issues and information that they reviewed

2   and considered, descriptions which had input from both the directors and RAE.

3        89.    By virtue of the foregoing, the Individual Defendants and RAE have violated section

4   20(a) of the 1934 Act.

5        90.    As set forth above, the Individual Defendants and RAE had the ability to exercise

6   control over and did control a person or persons who have each violated section 14(a) and SEC Rule

7   14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling

8   persons, these defendants are liable pursuant to section 20(a) of the 1934 Act. As a direct and

9   proximate result of defendants' conduct, RAE will be irreparably harmed.

10   **COUNT III**

11   **Claim for Breach of Fiduciary Duties Against the Individual Defendants**

12        91.    Plaintiff incorporates by reference and realleges each and every allegation contained

13   above, as though fully set forth herein.

14        92.    The Individual Defendants have violated the fiduciary duties of care, loyalty, good

15   faith, and independence owed to the public shareholders of RAE and have acted to put their personal

16   interests ahead of the interests of RAE's shareholders.

17        93.    By the acts, transactions, and courses of conduct alleged herein, Individual

18   Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive

19   plaintiff and other members of the Class of the true value inherent in and arising from RAE.

20        94.    The Individual Defendants have violated their fiduciary duties by entering RAE into

21   the Proposed Acquisition without regard to the effect of the Proposed Acquisition on RAE's

22   shareholders.

23        95.    As demonstrated by the allegations above, the Individual Defendants failed to

24   exercise the care required, and breached their duties of loyalty, good faith, and independence owed

25   to the shareholders of RAE because, among other reasons:

26            (a)    they failed to take steps to maximize the value of RAE to its public

27   shareholders;

28            (b)    they failed to properly value RAE and its various assets and operations; and

1    (c)    they ignored or did not protect against the numerous conflicts of interest
2 resulting from the directors' own interrelationships or connection with the Proposed Acquisition.

3    96.    Because the Individual Defendants dominate and control the business and corporate
4 affairs of RAE, and are in possession of, or have access to, private corporate information concerning
5 RAE's assets, business, and future prospects, there exists an imbalance and disparity of knowledge
6 and economic power between them and the public shareholders of RAE which makes it inherently
7 unfair for them to pursue and recommend any proposed acquisition wherein they will reap
8 disproportionate benefits to the exclusion of maximizing shareholder value.

9    97.    By reason of the foregoing acts, practices, and course of conduct, the Individual
10 Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary
11 obligations toward plaintiff and the other members of the Class.

12    98.    Unless enjoined by this Court, the Individual Defendants will continue to breach their
13 fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Acquisition
14 which will exclude the Class from its fair share of RAE's valuable assets and operations, and/or
15 benefit defendants in the unfair manner complained of herein, all to the irreparable harm of the
16 Class.

17    99.    The Individual Defendants are engaging in self-dealing, are not acting in good faith
18 toward plaintiff and the other members of the Class, and have breached and are breaching their
19 fiduciary duties to the members of the Class.

20    100.    As a result of the Individual Defendants' unlawful actions, plaintiff and the other
21 members of the Class will be irreparably harmed in that they will not receive their fair portion of the
22 value of RAE's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the
23 Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the
24 members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition
25 terms and may consummate the Proposed Acquisition, all to the irreparable harm of the members of
26 the Class.

27

28

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

101. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT IV

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against RAE

102. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

103. Defendant RAE aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of RAE, including plaintiff and the members of the Class.

104. The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

105. By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

106. RAE colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

107. Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## COUNT V

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against Battery Ventures

108. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

109. Battery Ventures aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of RAE, including plaintiff and the members of the Class.

- 23 -

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

110. The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

111. By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

112. Battery Ventures colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

113. Battery Ventures participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests. Battery Ventures obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches. Battery Ventures will benefit, *inter alia*, from the acquisition of the Company at an inadequate and unfair price if the Proposed Acquisition is consummated.

114. Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A   Declaring that this action is properly maintainable as a class action;

B   Rescinding, to the extent already implemented, any merger agreement;

C   Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process reasonably designed to enter into a merger agreement providing the best possible value for shareholders;

D   Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for RAE and obtain a transaction which is in the best interests of RAE's shareholders;

E   Imposition of a constructive trust in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

1      F      Awarding plaintiff the costs and disbursements of this action, including reasonable

2 attorneys' and experts' fees; and

3      G      Granting such other and further equitable relief as this Court may deem just and

4 proper.

5 DATED: November 1, 2010           ROBBINS UMEDA LLP
                        MARC M. UMEDA

6                         STEPHEN J. ODDO
                        REBECCA A. PETERSON

7                         GINA STASSI

8

9

10                         STEPHEN J. ODDO

11                         600 B Street, Suite 1900
                        San Diego, CA 92101

12                         Telephone: (619) 525-3990
                        Facsimile: (619) 525-3991

13                         KENDALL LAW GROUP
                        JOE KENDALL

14                         jkendall@kendalllawgroup.com
                        JAMIE MCKEY

15                         jmckey@kendalllawgroup.com
                        3232 McKinney Avenue, Suite 700

16                         Dallas, TX 75204
                        Telephone: (214) 744-3000

17                         Facsimile: (214) 744-3015

18                         Attorneys for Plaintiff

19

20

21

22

23

24

25

26 542427

27

28

COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY